I don't want to mispronounce your name. My name is Brad Bogan and I represent Miss Lauren Nicole Smith and may it please the court. Miss Smith pleaded guilty to a single count indictment that charged her with aiding and abetting her co-defendant Rosemary Rubio. I have a question. You're using her name. Are we supposed to be in the courtroom that these are recorded and it's available for the public. I'll say appellant. Appellant pleaded guilty to a single count indictment that charged her with aiding and abetting her co-defendant in the possession of five grams or more of methamphetamine with the intent to distribute it. In short the facts of the offense are that appellant was riding along as her co-defendant drove appellant's car to an ATM so the man that the two of them had met at a bar in Midland could withdraw money to purchase cocaine from the co-defendant. Appellant raises two issues on appeal with respect to her sentence. First she argues that the district court plainly erred in calculating the criminal history score for purposes of the sentencing guidelines based on a prior conviction, a probationary sentence. The government does not dispute that there was error and that the error was plain. However the government argues that the error did not affect appellant's substantial rights and that in any event the court should not exercise its discretion to correct the error. The second issue that appellant raises is that the district court erred in refusing to apply a minor role adjustment based on her mitigating role in the offense. And as I mentioned appellant and her co-defendant had gone to a bar in Midland at the bar and the statements are inconsistent on this point. One or the both of them met a man who wanted to purchase cocaine from the co-defendant. He didn't have any money on them so the co-defendant drove appellant's car with appellant riding in the driver's seat to an ATM so that the man could withdraw money to purchase the cocaine. On the way to the ATM the car was pulled over by the Midland Police Department for a traffic violation. The appellant consented to a search of the car and in the car the officers found a purse behind each of the two seats, the driver's seat and the passenger seat. A single purse. Two purses, two purses. Appellant had her purse behind her in the passenger seat. Inside the purse were several different drugs and pills all consistent with personal use amounts. Behind the driver's seat where co-defendant was, was the co-defendant's purse. And inside that purse were several small quantities of various controlled substances as well as just under 40 grams of methamphetamine. And she knew that her co-defendant had the amount of the distributing amount of drug. That's the factual basis that she agreed to after her rearrangement. And so she, well you have to take that. So she knew that she had it and she allowed her car to be used for that. So why is she, how did the district court err under our precedent? Well, two responses. One, there's no evidence in the record that appellant was going to profit or had any other role in her co-defendant's sale of cocaine or methamphetamine. But she wasn't peripheral to the advancement of the activity because her car had to be used and she is the controller of her car. Her car was integral to the activity, not peripheral. Well, this court has held in the past that in order to be eligible for a mitigating role adjustment, a defendant must play a peripheral role in the criminal activity. And that a defendant whose participation is integral, therefore disqualifies her. However, the sentencing commission has clarified more than once that that is not what it intended with respect to the availability of this adjustment. We're bound by our precedent, aren't we? I believe this would be a situation where, for example, say a statute was amended that reflected a different view of the law than the court had expressed. Have we expressed this view since the amendment? Not since the most recent amendment that took effect on November 1st of this year. The court has expressed that same view with respect to peripheral involvement since the November 1st, 2011 amendment. However, it's difficult to see how that case law is consistent with what the commission said in 2011. It doesn't matter. If we have to follow the case that applies after the new law, if we have a precedent, we're bound to follow it unless there's another change in the rule. Well, if the court were to view the 2011 amendment as not controlling in this instance, there's still the November 1st, 2015 amendment. Which added a sentence to the commentary to the guideline that says that the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if she is substantially less culpable than the average participant in the criminal activity. Well, it's a factual determination on the part of the district court. Well, I hear you talking about a question of clear error or not. I think you're more concerned about your other point. With respect to the error in the criminal history calculation? Yes. In that case, the pre-sentence report, which the district court adopted . . . We're talking about a 30-month difference in sentence, right? Well, it . . . If you took the lowest guideline range under what the district court used versus now with both sides agreeing it's correct. You don't agree, but . . . Well, with respect to just that one error in the criminal history calculation . . . Yes, regardless and within the zone of sentencing. Yes, the . . . There's still a 30-month difference between the lowest ends of the two guidelines. Thirteen months. Thirteen, I thought. The range used by the court after granting the government's motion for a substantial assistance departure of two levels in criminal history category four put her at 70 to 87 months. You're here on plain error on this point. Yes. I have some concern about the last prong. If error seriously affects the fairness, integrity, or public reputation of judicial proceedings, that is . . . To me, that's a pretty high standard. Unfortunately, our cases and other circuits as well, from time to time, don't really put much content in that. But how would you argue that this sentence really meets that standard? What happens here is that you have two standards. One is applied erroneously and a new standard, but they overlap. And the sentence that came down fell into that zone. So one can argue that the facts and so forth, that perhaps that this did influence the other trial court's decision or not. We have cases that spot that here and there and so forth. It's a very sort of amorphous standard. But that aside, how do you make this standard that the sentence that actually resulted from the erroneous use of that old conviction affects the integrity of the court, et cetera? If it does that, then why has any sentencing error did the same? In other words, surely not every review of sentencing in here on a plain error really dispenses or does not need to meet that latter standard. No, and there are cases when this court has found that the other three prongs of plain error review have been satisfied, but the court has nevertheless declined to exercise its discretion to correct the error. For example, the defendant's criminal history might be particularly extensive and egregious. And in that situation, the court may find that there is no adverse effect on the fairness, integrity, and reputation of the judicial proceedings. In this particular case, the error was particularly obvious. And this court has mentioned that as a factor weighing in favor of exercising its discretion to correct the error. This wasn't some obscure. It was not obvious enough for counsel to object. No, it wasn't. So we're still under clear error. We are. But I would note that ruby, pardon me, appellant's counsel didn't object, but the probation officer who's responsible for preparing the pre-sentence report also missed it, as did the government and the court. So, yes, there should have been an objection. But nevertheless, and this court has addressed this error on more than one occasion, and it's obvious from a plain reading of the sentencing guideline. Well, let's just get to our . . . let's say we don't . . . that's not a significant factor here. Okay. And I admit our cases are all over the map on what we do in these circumstances. Right. Is there an indication from this record that Judge Dunnell relied on the absolute numbers in the guidelines? In other words, okay, I'm guided by the guidelines, so I'm going to pick a number somewhere along that because of the guidelines as opposed to the other . . . The guidelines control. Right. Well, after the court had addressed the government's 5K motion and the request for a minor role, Judge Dunnell went through the guidelines calculation and said, I find that the guideline range is fair and reasonable. So, I believe that reflects that the court was, in fact, relying on what it believed to be the correct guidelines range, as opposed to some other considerations outside of that factor that might have weighed in favor of the sentence. And I think it's also significant that the court imposed a sentence at the very bottom of the guidelines range. But you could have said, I find it fair and reasonable to be, I think that's the right sentence for that crime. It cuts both ways. You can't . . . fair and reasonable doesn't cut necessarily in your favor. Well, I agree that it can cut both ways, depending on the record. But aren't you bound anyway? I understand that we might want to do on the fourth prong. We might want to analyze this case. But in our precedent, the third prong is still applicable, even if the Supreme Court's granted cert on the question. Yes. So, if we were to decide this case today, you would lose on the third prong. I disagree. There are cases in which this court has found the third prong has been satisfied and has vacated and remanded when a sentence fell within an overlap between a correct and incorrect range. Pratt is one of those cases. I wrote that. I think I wrote Smith, too. I'm saying these are hard cases. And every time I've looked at it, you can pick and choose almost. It's difficult. We're not consistent. I would say that it weighs heavily on the facts of a given case. But the fact that it's overlapping could be the fourth prong reason, even if it's not the third prong reason. I disagree. And that is because even though the guidelines are advisory post-Booker, there's still a very important part of sentencing. The Supreme Court has said that in making its sentencing determination, the district court must start with the sentencing guidelines. That's the starting point and the initial benchmark. And it is also the case that the rate of within-guidelines sentences varies quite a bit from district to district around the country. And I don't have the statistics in front of me, but I'm fairly confident in the Western District of Texas, where this case is from, that far more within-guidelines sentences are imposed than in other places around the country. So it's not simply that the guidelines remain important and the benchmark, but that courts, particularly in this district, still rely on them in order to select . . . Right. But this is within the guideline, even for the correct range. And so that might affect our decision to use our discretion. It can. And I believe that nevertheless, the court should exercise its discretion to correct the error, in part because of the obviousness of it, which the court mentioned, but also because, as I said, the guidelines are still very important and central to the sentencing process. And I think it's important that errors of that nature are in fact corrected. And although this isn't, strictly speaking, relevant, I'll just note that at the time of sentencing, when the government made its motion for a reduced sentence for substantial assistance, it was relying on a prior version of the pre-sentence report and requested a sentence of 57 months, which it believed to be at the bottom of what it believed to be the correct range, based on, like I said, the earlier version of the pre-sentence report. Even if you succeed in persuading that you meet the third prong, it doesn't, of course, follow that you meet the fourth prong. Either that or the fourth prong is empty of content. Well, the fourth prong does have content, as this Court's case has made clear. Well, and it will not have content if it just follows from meeting the third one. In other words, because there's substantial, it may be substantial, it may be that the sentence was affected by this. Right? Yes. That's the third prong. Right. Well, that's the same that you're successful in saying that that happened. We still have to answer the fourth prong, and that's my difficulty. The fourth prong is there for a reason. Particularly in sentencing, where the sentencing process became this whole new sentencing goblet thing, brought a whole wealth of cases to our Court. Sentencing, very technical points, et cetera. We've got a lot of expertise out there about these things, very technical points. But unless we're going to dispense with that, collapse this plain error test we've been using, we have to give some meaning to that public integrity and so forth. I have a hard time saying that our call, this very close call, this, that, or the other, affects the public integrity of this Court. We're just doing the best we can. Now, I distinguish that from a situation where someone got a sentence that under the law was not allowed, that from a standpoint, no offense or something. But can you help me with that? Well, I think the Court has to look at prior cases in which the Court has decided to exercise its discretion. I have, but that doesn't help me. Well, it's a discretionary call. It's perhaps difficult to make in any particular case, but I believe that on the record here it does warrant correction. I understand your argument. Thank you. Thank you. May it please the Court. I would like to direct this Court to page 163 of the record to clarify a question about what the Court relied on. Right before imposing sentence, the Court clearly stated that it was considering the guideline range in an advisory capacity. And then it went on to say that it was considering the sentencing factors as set forth in the 3553 before arriving at the 70-month sentence. And I do think that is significant that it said on the record that this was an advisory range and that it had considered those other factors. I'm not sure how much weight to put on that. Well, it shows that he also looked at the factors and that the range he didn't feel bound by and that he thought that 70-month sentence was the proper sentence and not that he was bound in by the sentencing guideline range that was recommended. But what I really wanted to focus on is exactly the fourth prong. And I do believe that the particular facts in this case do not yield a result that seriously affects the integrity and fairness of the sentencing proceeding. And I want to start at the beginning in this case. Early on, the magistrate judge stated, What gives me great concern, great concern, is appellant's criminal history. The record reflects a lifetime, a lifetime of criminal history by appellant spanning 20 years. Back in 1995, when she was 12 years old, she was charged with her first theft. And I do direct you to pages 191 and 196 of the record. That's the pre-sentence report and her criminal history, a very lengthy arrest record, a very serious criminal history that I think the court took into consideration or this court should take into consideration when you look at the sentence she got. For example, in 2012, she was convicted of possession of a controlled substance. However, the PSR goes further and says in this that when the police went to execute the narcotic search warrant at the home, they found appellant in the home along with another individual, along with a pistol, along with a magazine containing six rounds, digital scales, and $1,200 or over $1,300 in cash. That's a serious crime. Then in 2005, again, convicted of possession of cocaine. At sentencing, the district court specifically zeroed in on these two prior convictions and told the appellant, and again, I think this is important, it's from page 161, I'm quoting, I want you to be fully aware that you are very fortunate that the government did not enhance your conviction in this case. She had two prior convictions. If the government had filed the sentencing information, she would have been looking at a mandatory minimum of 120 months. She got 70. The government gave her a break in not filing the sentencing enhancement. Why? Why did that happen? Why didn't we file one? Unfortunately, the prosecutor in this case is no longer with our office, but I suspect it's because of her life, her history. They felt bad for her, but I felt like, or what I'm guessing is, they felt like she could get a decent sentence without the 120, but when you look at that fourth prong and say, are we seriously affecting the fairness with her getting the 70-month sentence, I think the answer is clear that it did not. Well, if she had her first criminal offense when she was 12, that points the arrow pretty quickly toward an impoverished background, et cetera, et cetera. Those are the kinds of considerations that would affect most prosecutors, I think. As some sympathetic, I don't think there's violence in any of these. The presence of a gun, he talks about that. As close as that comes to any suggestion of violence. It doesn't surprise me that the prosecutor would do as he did, not enhance. Right. I just wanted to make sure that the court was aware of . . . Seventy months is not a hard time, anyway. That's all in the record? Yes, that's all in the record, but I just wanted to . . . I know it's in the record what the judge said, but the prior convictions? Yes, yes. Yes, they're all in the record. Again, I would focus, I think, what this court should do, given about that third prong may be up in the air. I think if you look at the fourth prong, and I think Judge Higginbotham is correct, that we have to focus more on that last prong. Oftentimes, in the past, we've kind of lumped them together, but when you do look at that . . . Our recent cases focus on the fourth prong. It seems like more and more, but there are often times where it's like, well, the third prong has been met, so therefore the fourth prong has been met. They didn't really flesh it out. The court held this year that the third prong being met, you have to articulate the fourth prong, and it's not enough to meet the third prong. Absolutely. Absolutely, we are focusing on the fourth prong. I was just saying that watching these cases proceed, it seems like we are spending more time on that fourth prong than we have in the past, and I think that is right, and I just want to just remind this case, that back in Puckett v. United States, the Supreme Court says it's difficult to meet all four prongs, and then the Supreme Court in Elano said that discretion should be exercised when a miscarriage of justice resulted, and when you look at that direction from the Supreme Court, when you look at the fourth factor here, I don't think the court should choose to exercise its discretion. Can we consider in that decision, is it appropriate to explicitly consider the fact that the district court went on at length about the decision by the government not to enhance, and said if the government would have enhanced, this would have been a mandatory 20 years, and you're just really lucky, ma'am, that that government didn't enhance, because there's no reason that they couldn't have, and that's just their decision, so this is not a prime case for us to exercise our sparing discretion, because the person's already gotten such a good deal. Is that a reasonable thing to consider, or is that not appropriate to consider? I think it's reasonable to consider. That's part of the record. It's a very fact-specific question about this case, and I think it's absolutely proper. I would move over to the minor role. I do just want to point out that appellant did not file any objections or corrections to the findings in the PSR, did not dispute the conclusion that she was not entitled to the minor role, although at sentencing she did object. She offered no evidence. She merely gave self-serving, unsupported statements, and, for example, she says at sentencing defense counsel that the co-defendant was appellant's dealer, that appellant was not going to profit from the transaction, and that she was just doing her dealer a favor. That's page 160 from the sentencing, and I don't know where that evidence comes from. It is not in the pre-sentence report. I combed the record. I believe that was just a statement made by defense counsel, and then in the brief when they argue she's entitled to minor role, they argue that the co-defendant was appellant's dealer, and then they cite back to the attorney's statement at sentencing. So that is not evidence that I'm aware of, and if it's in there, maybe I've missed it, but that is not reflected in the pre-sentence report. This case shows that appellant was involved in the planning. She was involved in the execution. They were both in the bar. They both met the man. They hatched this scheme about going to an ATM, having the defendant follow her, and they used appellant's car. I don't see how a court could find that she was substantially less culpable than her co-defendant. Well, so in fact, it came up at the hearing. The information the district court had was that she had never mentioned this in her extensive debriefing, this whole just my dealer. Right. She specifically withheld that point even in the debriefing that took place. So it's more significant even than the lawyer just brought it up at the last minute. This was not part of her debriefing. It all of a sudden came up, right, according to the transcript of the sentencing hearing. Right. At the sentencing hearing, this all came up. There were no objections filed, and again, it may be in the record. I looked through everything. I looked in the pre-sentence report. I don't know where the evidence . . . The counsel for the government said specifically it did not include her information that she is now proposing to the court that this is the one and only time that she was doing this with the dealer. That's right before that. Right. So that's brand-new information right then and wasn't part of any of the prior debriefing and all. That is my understanding. So are there any other questions? It seems to disbelieve that, right? So it's within the discretion. They could choose to disbelieve that late statement by the lawyer. Right. Absolutely. It was up for the court to decide, and you could disbelieve her, and I don't think you should accept her statements about that. There's no evidentiary basis in the record for that. Are there any other further questions? Thank you. With respect to the fourth prong on the first issue, the government mentioned that Appellant has an arrest record going back to age 14. I think it's important to put that in perspective. She did have a troubled childhood. Her parents divorced when she was 10 years old. She lived with her mother, who was a heavy drug user, primarily of cocaine, and she was also the victim of sexual abuse as a child. And while she does have a number of arrests and several criminal convictions, they are all for relatively low-level offenses. Arrests don't count. The court shouldn't look at those, right? No, particularly since they're juvenile arrests. But with respect to her adult criminal conviction, she has two convictions for theft, forgery of a financial instrument, and possession of a controlled substance. And I would also dispute the notion that she got a break by not having a sentence enhancement filed that would have elevated her minimum sentence to 10 years. This was not some large methamphetamine distribution operation. There's no evidence whatsoever that Appellant was the mastermind of any operation. The record shows that she's a drug abuser. You don't have to be the mastermind to get the mandatory minimum. I mean, you don't have to be the mastermind. And the district court said, I want you to be fully aware that you are very fortunate that the government did not enhance your conviction in this case, which would have been a mandatory minimum sentence of 20 years. So the district court thought she was very fortunate and said there's nothing Ms. Brunson can do and nothing I can do. It would be a mandatory minimum of 20 years. There's no parole in federal. And then he went on to say how sorry he felt that he wanted to change her life because she has a rough life and wanted to change it. But the district court said that on the record. And I think that reflects that the district court was, in fact, concerned about her. But he said the mandatory minimum point. Well, he was incorrect about the mandatory minimum. If she had, or if the government had filed an enhancement information, it would have raised the mandatory minimum from 5 years to 10 years, which I believe the district court mentioned, not 20 years. 20 years, I don't believe, is available under the subsection of the statute under which she was charged based on the drug quantity. The lawyer didn't say anything at that point? Like, oh, Your Honor, you're wrong about that? No. No. But, again, I think that the statements of the district judge reflected genuine concern for her welfare, and he was attempting to impress upon her that she has to get away from this drug activity. She has to stop using drugs and get her life straight. Which is consistent with the sentence that she got and would show that we don't need to do something different than what the district did. Well, I disagree that 70 months in this case is necessary to impress upon Smith that she needs to get out of the drug activity. And for that matter, just parenthetically, the Supreme Court has held that a sentence can't be extended for the purpose of ensuring that somebody receives drug treatment. I think the upshot of that is that sentencing somebody to 70 months based on a plainly incorrect guidelines calculation, because they're a drug user who has a criminal history. There's nothing in the record that says that that's why. He didn't say, I'm going to make sure you go to this treatment program and I need to sentence you to this amount for that reason. No. You don't have that in this case. No. And I'm not arguing that the district court did that, but in terms of explaining or putting in perspective the district court's statement, you could have gotten a lot more. It wasn't that he was holding out the possibility of an even lengthier sentence than 70 months. He was impressing upon her that she needs to change her ways. I see my time has expired. Thank you, counsel. Thank you.